## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ST. PAUL TRAVELERS COMPANIES, INC. and DAISY CONSTRUCTION COMPANY, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   C.A. NO. 05-880 (KAJ)<br>) |
| WALPAR, INC., | )<br>) |
| Defendant. | )<br>) |
| AND | )<br>) |
| DAISY CONSTRUCTION COMPANY, | )<br>) |
| Third-Party Plaintiff, | )<br>) |
| v. | )<br>) |
| SPECIALTY SERVICE CONTRACTORS, INC., | )<br>)<br>) |
| Third-Party Defendant. | ) |

### ANSWER AND AFFIRMATIVE DEFENSES, COUNTERCLAIMS
### AND THIRD-PARTY COMPLAINT OF THIRD PARTY DEFENDANT
### <u>SPECIALTY SERVICE CONTRACTORS, INC.</u>

Defendant, Specialty Service Contractors, Inc. ("Specialty), by and through its attorneys, Connolly Bove Lodge & Hutz LLP, provide the following Answers and Affirmative Defenses to Daisy Constructions Company's Third Party Complaint:

1. Specialty admits that St. Paul Travelers Companies, Inc. and Daisy Construction, Company ("Daisy") filed a complaint against Walpar, Inc. ("Walpar") in this Court seeking declaratory relief. Specialty further admits that a copy of the complaint was attached to the

Third Party Complaint at Exhibit "A" and that the Third Party Complaint speaks for itself. Specialty denies the remainder of the allegations in this paragraph.

2. Specialty admits that Walpar filed an Answer and Counterclaim. Specialty further admits that a copy of Walpar's Answer and Counterclaim is attached to Daisy's Third Party Complaint at Exhibit "B" and that Walpar's Answer and Counterclaim speaks for itself. Specialty denies the remainder of the allegations in this paragraph.

3. No answer is required to the allegations in this paragraph. To the extent that an answer is required it is denied.

4. It is admitted that Daisy and Specialty entered into a subcontract dated April 26, 2002 for certain work relating to signage on at the Delaware Memorial Bridge ("Contract"). It is further admitted that the subcontract attached to the Third Party Complaint at Exhibit "C" speaks for itself. Specialty denies the remainder of the allegations in this paragraph.

5. Admitted.

6. Specialty admits that it entered in a materials and supplies agreement with Walpar and that the terms of the Agreement speak for themselves. Specialty further admits that Daisy's failure to pay Specialty for its work serves as the basis for Walpar's claimed damages. The remainder of the allegations in this paragraph are denied.

7. Denied.

8. Denied.

9. This paragraph states a legal conclusion to which no response is required. To the extent that an answer to this averment is required, it is denied.

## COUNT I
## BREACH OF CONTRACT

10. Specialty incorporates by reference paragraphs 1 through 9 as if fully stated herein.

11. Specialty admits that the original Contract price was $722,000.00. The remainder of the paragraph is denied. By way of further answer, the Contract price was later reduced to $597,294.96 due to a change in the scope of work to be performed by Specialty.

12. Specialty admits that it has received payments totaling $421,695.71. The remainder of the paragraph is denied.

13. Specialty admits that the Contract between Daisy and Specialty speaks for itself. The remainder of the paragraph is denied.

14. Specialty admits that the Contract between Daisy and Specialty speaks for itself. The remainder of the paragraph is denied.

15. Specialty admits only that the Contract required Specialty to install signage on the Delaware Memorial Bridge and that the Contract speaks for itself. The remainder of the allegations contained in the first sentence of the paragraph are denied. Specialty is without sufficient information to admit or deny the remainder of the allegations in this paragraph and, therefore denies the same.

16. Specialty is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same. By way of further answer, Specialty denies that it delayed the Project.

17. Specialty is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same. By way of further answer, Specialty denies that it delayed the Project.

18. Denied.

19. Specialty admits that it was provided with a punch list of items that purportedly needed to be completed. Specialty further admits that it completed the items on the punch list despite the fact that, *inter alia*, Daisy had already breached the Contract by allowing a third party to complete work covered by the Contract and failing to timely pay progress payments to Specialty when due pursuant to the Contract. The remainder of the allegations contained in the first sentence of the paragraph are denied. Specialty is without sufficient information to admit or deny the allegations contained in the second sentence of the paragraph and therefore denies the same.

20. Specialty admits only that Daisy requested that Specialty complete the punch list items which had either been completed or items which Specialty was no longer required to complete due to Daisy's breaches of the Contract. Specialty denies the remainder of the allegations contained in this paragraph.

21. Specialty admits that Daisy purported to terminate the contract but Specialty's continued performance had already been excused by Daisy's prior breaches. Specialty denies the remainder of the allegations in this paragraph.

22. Specialty is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

23. Denied.

24. Denied.

25. Denied.

26. Specialty is without sufficient information to admit or deny the allegations in this paragraph and therefore denies the same.

27. Admitted that the Contract speaks for itself. The remainder of the allegations in this paragraph are denied.

## COUNT II
## BREACH OF WARRANTY

28. Specialty incorporates by reference paragraphs 1 through 27 as if fully stated herein.

29. Specialty admits only that it agreed to warrant its work and that its warranties were later voided when Daisy allowed a third party subcontractor to perform work provided for under the Contract and by Daisy failing to timely pay progress payment. Specialty denies the remainder of the allegations contained in this paragraph.

30. Denied.

## COUNT III
## CONTRACTUAL INDEMNIFICATION

31. Specialty incorporates by reference paragraphs 1 through 30 as if fully stated herein.

32. Denied.

33. Specialty admits only that the Contract speaks for itself. Specialty denies the remaining allegations contained in this paragraph.

34. Specialty admits only that the Contract speaks for itself. Specialty denies the remaining allegations contained in this paragraph.

35. Denied.

## COUNT IV
## COMMON LAW INDEMNIFICATION

36. Specialty incorporates by reference paragraphs 1 through 35 as if fully stated herein.

37. Denied.

38. Denied.

## COUNT V
## ATTORNEY'S FEES

39. Specialty incorporates by reference paragraphs 1 through 38 as if fully stated herein.

40. Specialty admits only that the Contract speaks for itself. The remainder of the allegations contained in the paragraph is denied.

41. Denied.

## AFFIRMATIVE DEFENSES

1. Daisy has failed to state a claim upon which relief can be granted.

2. Daisy claims are barred by the doctrines of waiver, acquiescence and/or estoppel.

3. Daisy's breach of the Contract excused Specialty's performance of any further obligations under the Contract.

4. Any damages incurred by Walpar are the result of Daisy's refusal to pay Specialty as required by the Contact.

5. Daisy's claims are barred as it failed to follow the dispute resolution process contained in the Contract.

6. Any damages sustained by Daisy were due to its own acts or omissions and/or those of the owner not Specialty.

WHEREFORE, Third Party Defendant Specialty Service Contractors, Inc. respectfully requests that this Honorable Court dismiss the Third Party Complaint and award Third Party Defendant the costs of this suit and such other relief as this Court deem just.

## SPECIALTY SERVICE CONTRACTORS, INC.'S THIRD PARTY COUNTERCLAIMS AGAINST DAISY CONSTRUCTION COMPANY

Third Party Counterclaim Plaintiff Specialty Service Contractors, Inc.**,** by its attorneys, for its counterclaim against Counterclaim Defendant Daisy Construction, Company, hereby alleges as follows:

### PARTIES

1. Third Party Counterclaim Plaintiff Specialty Services Contractor, Inc. ("Specialty") is a corporation organized under the laws of the state of Maryland.

2. Third Party Counterclaim Defendant Daisy Construction Company is a corporation organized under the laws of state of Delaware with its principal place of business located at 3128 New Castle Avenue, New Castle, DE 19720.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000.

4. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (a)(2) because a substantial part of the acts or omissions claimed took place in this judicial district.

### NATURE OF THE ACTION

5. On or about May 3, 2002 Daisy entered into a contract with the Delaware River and Bay Authority ("DRBA") to act as the general contractor for certain work to be performed on the Delaware Memorial Bridge ("Project").

6. Daisy entered into a subcontract ("Contract") with Specialty dated April 26, 2002 for the performance of certain signage work required as part of the Project based mostly upon

plans and specifications and ground level elevations provided by Daisy and/or the owner. The original Contract Price was $722,000.00 but it was later reduced to $597,294.96 due to reduction in Specialty's scope of work.

7. Pursuant to the terms of the Contract, payments were to be made by Daisy to Specialty upon submission of requests for progress payments.

8. In or about April 2003, Specialty discovered that the plans and specifications and ground level elevations provided by Daisy and/or the owner and/or its agents did not allow Specialty to perform the work under the Contract in a manner consistent with industry standards and/or sound building practices. Specialty notified Daisy of the errors and omissions and suggested solutions to perform the work in a good and workmanlike manner.

9. Specialty diligently followed up on its suggested solutions with Daisy, however, Daisy refused to provide Specialty with a response.

10. As a direct result of Daisy's refusal to agree to correct the plans and specifications, Specialty was delayed in completing its work.

11. Upon information and belief, on February 2, 2004, without notice, DRBA hired a third party subcontractor to perform work that was within the scope of the Contract.

12. Immediately upon discovering that a third party subcontractor had been hired, Specialty advised Daisy that this action constituted a breach of the Contract and voided all Specialty's warranties.

13. Specialty, however, completed all other work remaining on the Contract.

14. During this same time period, Daisy refused to issue progress payments for invoiced work completed by Specialty.

15. Specialty wrote to Daisy on a number of occasions advising Daisy that it was delinquent in payment of invoices and that a number of Specialty's suppliers, including Walpar, Inc., could not be paid until and unless Daisy paid the open invoices. Specialty further advised Daisy that its continued refusal to issue payment of outstanding invoices was hindering Specialty's ability to procure materials necessary to complete work under the Contract and likely would delay the Project.

16. Daisy refused to pay the open invoices as required under the terms of the Contract.

## COUNT I
## BREACH OF CONTRACT

17. The allegations contained in paragraphs 1 through 16 are incorporated herein by reference.

18. Under the terms of the Contract, Daisy was required to pay Specialty upon submission of Specialty's requests for progress payments.

19. In or about September and October 2005, Specialty requested payment of work completed under the Contract totaling $175,599.00.

20. Despite repeated requests, Daisy refused to issue payment of this amount.

21. The Contract required Daisy to issue payment upon application. Daisy breached the Contract by failing to pay Specialty's applications when due.

22. Specialty is entitled to payment of the outstanding invoices totaling $175,599.00.

WHEREFORE, Third Party Counterclaimant Specialty Services Contractors, Inc. demands a judgment is entered against Third Party Counterclaim Defendant Daisy Construction Company, in the amount of $175,599 for breach of contract.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. PAUL TRAVELERS COMPANIES, INC. and DAISY CONSTRUCTION COMPANY, | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | C.A. NO. 05-880 (KAJ) |
| WALPAR, INC., | )<br>)<br>) | |
| Defendant. | )<br>) | |
| AND | )<br>) | |
| DAISY CONSTRUCTION COMPANY, | )<br>) | |
| Third-Party Plaintiff, | )<br>) | |
| v. | )<br>) | |
| SPECIALTY SERVICE CONTRACTORS, INC., | )<br>)<br>) | |
| Third-Party Defendant. | ) | |

## THIRD PARTY COMPLAINT

Third Party Plaintiff, Specialty Service Contractors, Inc. ("Specialty"), asserts the following third party action against Third Party Defendant, St. Paul Travelers Companies, Inc. ("St. Paul"):

## PARTIES

1. Specialty is a corporation organized under the laws of the state of Maryland.

2. St. Paul is a corporation organized under the laws of state of Minnesota with its principal place of business located at 385 Washington Street, St. Paul, MN 55102.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

4. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (a)(2) because a substantial part of the acts or omissions claimed took place in this judicial district.

**NATURE OF THE ACTION**

5. On or about May 3, 2002 Daisy Construction, Inc. ("Daisy") entered into a contract with Delaware River and Bay Authority ("DRBA") to act as the general contractor for certain work to be performed on the Delaware Memorial Bridge ("Project").

6. Daisy, through St. Paul, provided the DRBA with a payment bond ("Bond") to secure payment to subcontractors such as Specialty.

7. The Bond was executed by Daisy and St. Paul. A copy of the Bond is attached hereto as Exhibit A and incorporated herein by referenced as if fully set forth. St. Paul is the surety of the Bond.

8. Daisy entered into a Subcontract Agreement ("Contract") with Specialty dated April 26, 2002 for the performance of certain signage work required as part of the Project.

9. The original Contract price between Daisy and Specialty was $722,000.00. The Contract was later reduced to $597,294.96 due to a reduction in the scope of work.

10. Payments were to be made by Daisy to Specialty upon submission of requests for progress payments.

11. Specialty completed all of the work required under the Contract in a good and workmanlike manner.

12. Upon completing various phases of the work under the Contract, Specialty issued invoices to Daisy for payment. Despite repeated requests, Daisy has failed to pay Specialty $175,599.00 for work and materials supplied to the Project under the Contract.

13. Specialty provided notice of Daisy's default to St. Paul. St. Paul refused to make payment to Specialty.

## Count I
### Action on the Bond

14. The allegations in paragraph 1 through 13 are incorporated herein by reference as if fully set forth.

15. As a consequence of being the surety of the Bond, St. Paul has the obligation and legal duty under the Contract to pay valid claims, like those claimed by Specialty.

16. Pursuant to the terms of the payment bond St. Paul is indebted to Specialty in the sum of $175,599.00.

## Count II
### Breach of Contract By St. Paul

17. The allegations in paragraph 1 through 16 are incorporated herein by reference as if fully set forth.

18. Specialty as a subcontractor is an intended third-party beneficiary of the payment bond issued by St. Paul.

19. St. Paul has the obligation and legal duty under the bond to pay valid claims of subcontractors which Daisy fails to pay.

20. Daisy has failed to pay Specialty the sum of $175,599.00 validly due under the Contract

21.     Specialty provided written notice of Daisy's default in payment under the Contract to St. Paul.

22.     St. Paul is obligated to make payment to Specialty pursuant to the terms of the payment bond.

23.     St. Paul has refused to make payment to Specialty.

24.     St. Paul's failure to make payment to Specialty constitutes a breach of contract for which Specialty has been directly damaged in the amount of $175,599.00.

25.     St. Paul is indebted to Specialty in the amount of $175,599.00.

**WHEREFORE**, Third Party Plaintiff demands:

A.      A judgment against St. Paul requiring it to release the sum of $175,599.00 from the payment bond in satisfaction of all amounts owed to Specialty by Daisy for breach of the Contract, the costs of this action, pre and post judgment interest, reasonable attorneys' fees and such further relief as this Court deems just.

B.      A judgment against St. Paul for breach of contract in the amount of $175,599.00, the costs of this action, pre and post judgment interest, reasonable attorneys' fees and such further relief as this Court deems just.

                                              **CONNOLLY BOVE LODGE & HUTZ LLP**

                                              ___/s/ Scott G. Wilcox_____
                                              James D. Heisman (# 2746)
                                              Scott G. Wilcox (# 3882)
                                              1007 North Orange Street
                                              P.O. Box 2207
                                              Wilmington, DE 19899
                                              (302) 658-9141
                                              *Attorneys for Specialty Service Contractors, Inc.*

Dated: July 24, 2006

## **CERTIFICATE OF SERVICE**

I, Scott G. Wilcox, hereby certify that on this 24th day of July, 2006, I caused a true and correct copy of the foregoing **Answer and Affirmative Defenses, Counterclaims and Third-Party Complaint of Third Party Defendant Specialty Service Contractors, Inc.** to be served upon the following individuals via CM/ECF:

| | |
|---|---|
| Kevin W. Goldstein, Esq.<br>Stradley Ronon Stevens & Young, LLP<br>300 Delaware Avenue<br>Suite 800<br>Wilmington, DE 19801 | Edward Seglias, Esq.<br>Robert K. Beste, Jr., Esq.<br>Cohen Seglias Pallas Greenhill & Furman, PC<br>1007 N. Orange Street<br>Suite 1130<br>Wilmington, DE 19801 |
| Gary W. Aber, Esq.<br>Aber, Goldlust, Baker & Over<br>First Federal Plaza, Suite 600<br>P. O. Box 1675<br>Wilmington, DE 19899 | |

                                        */s/ Scott G. Wilcox*
                                        Scott G. Wilcox (# 3882)